IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY J. RENNA,

                    Plaintiff,                    OPINION AND ORDER

   v.

                                              08-cv-682-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Anthony J. Renna seeks reversal of the commissioner's determination that he is not disabled and ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the administrative law judge ignored favorable evidence concerning his mental impairments and did not give proper weight to the consulting physician or psychologist reports, resulting in erroneous findings on residual functional capacity and credibility. Plaintiff also contends that the administrative law judge erred at step five by failing to include all of his limitations in his hypothetical to the vocational expert and not resolving a conflict between the vocational expert's testimony and the <u>Dictionary</u>

1

of Occupational Titles.  Because I agree with plaintiff on most counts, I am reversing the commissioner's determination and remanding this case for further proceedings.

The following facts are drawn from the administrative record (AR):

## FACTS

### A. Background and Procedural History

Plaintiff was born on October 22, 1955.  AR 86.  He earned his general equivalency degree in 1988 and completed trade school in 1989.  AR 120.  His past relevant work included excavating, painting, iron work and roofing.  AR 122.

Plaintiff applied for disability insurance benefits on July 6, 2006, alleging an onset date of May 26, 2006.  AR 109-10.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on February 21, 2008, before Administrative Law Judge William B. Churchill in Dallas, Texas.  The administrative law judge heard testimony from plaintiff and a neutral vocational expert.  AR 19-42.  On April 14, 2008, the administrative law judge issued a written decision, finding plaintiff not disabled.  AR 9-18.  This decision became the final decision of the commissioner on August 27, 2008, when the Appeals Council denied plaintiff's request for review.  AR 1-4.

B. <u>Medical Evidence</u>

1. <u>Records before alleged onset date of May 26, 2006</u>

a. Physical impairments

Plaintiff had left rotator cuff repair surgery in 2000 and right rotator cuff repair surgery in October 2002 and February 2003.  AR 14.  He had hernia repair surgery on March 24, 2004. AR 617.    In 2005, plaintiff was diagnosed with diabetes, AR 600, and was treated for a chronic hepatitis C infection.  AR 337.  A June 17, 2004 ultrasound showed that plaintiff's liver was normal.  AR 995.  In March 2005, plaintiff attempted part-time work but his back pain increased.  He was taking Flexeril, Naproxen and Vicodin.  AR 906. August 2005 x-rays of plaintiff's back showed mild compression and anterior wedging of L3 vertebral body.  AR 341.  In March 2006, plaintiff was admitted to the Central Texas Medical Center with chest pain.  He was diagnosed with chest discomfort with some atypical features and no evidence of ischemia or injury.  AR 190-91.


b. Mental impairments

On June 14, 2004, plaintiff saw psychiatrist Mitali Chaudhuri and reported a long history of depression.  He said that he had first seen a psychiatrist in 2000 but did not take the prescribed medication because it made him groggy.  He said that he had been hearing voices and having hallucinations.  However, he stated, "I feel ok now."  Plaintiff was given

3

a diagnosis of bipolar disorder mixed with psychotic features and a Global Assessment Functioning Score of 50.  AR 924-27.

On September 9, 2004, plaintiff reported doing well on Zyprexa.  He was not hearing voices or having paranoid thoughts.  The psychiatrist noted that plaintiff had a history of becoming agitated on anti-depressants.  AR 918-19.

On June 16, 2005, plaintiff returned to see Dr. Chaudhuri.  He was satisfied with his medication, Seroquel.  His bipolar disorder was stable.  AR 897.  Plaintiff was seen again in February 2006, when he reported being compliant with his medication and denied any side effects or racing thoughts.  He refused an increased dose of Seroquel (quetiapine) and asked for Xanax.  AR 875-76.


2.  Records after May 26, 2006

a.  Physical impairments

On September 15, 2006, plaintiff was seen at the Veteran's Administration outpatient clinic for chronic Hepatitis C.  He reported no alcohol use for a year.  AR 651.  His liver enzymes were normal in August 2006. AR 817.  Four days later, plaintiff underwent lumbar spine X-rays, showing minimal endplate compression of the L3 vertebral body with narrowing and mild straightening of the normal curvature of the spine.  AR 653.

In February 2007, plaintiff's liver enzymes were normal.  AR 856.  Plaintiff reported pain and numbness from his right elbow to the fingers in his right hand.  AR 649.

On April 3, 2007, plaintiff was seen for pain from his left shoulder down to his fingers.  He was diagnosed with ulnar neuropathy and limb pain and prescribed an elbow splint.  AR 640-46.  X-rays revealed a minor abnormality of two ligament anchors at the humeral head in the left shoulder and bony spurs at the medial and lateral epicondyle and olecranon process of the left elbow with no acute findings.  AR 990-91.

On August 1, 2007, plaintiff reported being homeless.  He denied alcohol use but admitted smoking marijuana.  AR 633.  The doctor told plaintiff that if he stopped using marijuana, he could be considered for a liver biopsy.  AR 635.

b.  Mental impairments

On February 28, 2007, plaintiff saw a psychiatry resident and reported having mood swings and difficulty sleeping.  The resident noted that plaintiff had lost his apartment and had to live with his son, with whom he did not get along.  Plaintiff reported drinking beer occasionally and smoking marijuana daily.  The physician diagnosed stable bipolar disorder with hypomanic episodes, for which plaintiff was taking Seroquel.  AR 647-49.

On June 11, 2007, plaintiff saw psychiatrist David Hsieh, who noted plaintiff had had manic symptoms the week before.  Hsieh indicated that plaintiff was homeless and

experiencing paranoia.  Hsieh increased plaintiff's Seroquel dosage and diagnosed bipolar disorder with psychotic features.  AR 637-38.

On August 1, 2007, a clinic doctor noted that plaintiff had mild mania but no suicidal ideation.  AR 634.  On August 27, 2007, plaintiff reported feeling overly sedated on Seroquel.  The psychiatrist noted that plaintiff was having delusions and paranoia and increased his Seroquel.  AR 1042.

On November 27, 2007, plaintiff reported that he had stopped taking Seroquel because of its intolerable side-effects.  Plaintiff reported seeing dead people and hearing voices coming out of the woods.  The staff psychiatrist noted that his Global Assessment Functioning Score was 50 and discontinued plaintiff's Seroquel, starting him on a trial of Risperidone.  AR 1103.


## C.  Consulting Physicians

### 1.  Dr. Kenneth Long

On September 19, 2006, Dr. Kenneth L. Long performed a consultative examination of plaintiff for the state disability agency.  Plaintiff reported that he did his own housework and cooking, walked one and a half miles to the post office and back three days a week, drove and went shopping. AR 356.  On examination, Long found plaintiff had right shoulder motion limited to 90 degrees flexion or abduction and 30 degrees extension and left shoulder

6

motion limited to 150 degrees flexion or abduction and 45 degrees extension.   Long diagnosed minimal endplate compression of the L3 vertebral body with minimally narrowed disc space, status post bilateral shoulder surgeries and a history of Hepatitis C, diabetes, hypertension and bipolar disorder.  AR 357.  He also indicated that plaintiff was obese.  AR 356.

2.  Dr. Michele Chappuis

On September 19, 2006, state agency consulting psychologist Michele Chappuis, Ph.D., completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record.  She evaluated the evidence under the listing category for affective disorder.  In addressing the "B" criteria for these listings, she found plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Chappuis concluded that the evidence did not establish the presence of the "C" criteria.  She wrote that his allegations of disability were not fully supported by the evidence of record.  AR 361-74

Chappuis also completed a mental residual functional capacity assessment for plaintiff.  She found that plaintiff was moderately limited in the following areas, including:

- ability to maintain attention and concentration for extended periods;

7

- ability to work in coordination with or proximity to others without being distracted by them;

- ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- ability to accept instructions and respond appropriately to criticism from supervisors;

- ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

- ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and

- ability to respond appropriately to changes in the work setting.

Also, she found that plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions.  AR 383-86.


3. <u>Dr. Jimmy Breazeale</u>

On October 13, 2006, state agency physician Jimmy Breazeale completed a physical residual functional capacity assessment for plaintiff, finding that he had hypertension, degenerative disc disease, diabetes and Hepatitis C.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour work day and sit six hours in an eight-hour work day.  Breazeale found plaintiff's ability to push or pull was limited in his upper extremities and that he had limited reaching in all directions,

8

but could reach overhead on the right on a frequent basis.  He indicated that plaintiff could climb, stoop, crouch and crawl occasionally.  He wrote that the claimant's allegations of disability were not fully supported by the evidence of record.  AR 375-82.

### D.  Hearing Testimony

1.  Plaintiff

Plaintiff testified that he had served in the United States Army and received a Veterans Administration pension.  AR 22-23.  He testified that he had worked as iron worker, roofer, painter and landscaper but had stopped working in 2002 when fell and hurt his right shoulder.  AR 24-25. Also he testified that he had recently injured his left arm. that he took Metiform for diabetes and medication for high blood pressure and that his liver enzymes were high.  AR 26, 28, 30.  Plaintiff testified that he saw a mental health professional and took Seroquel because he heard voices and had anxiety attacks.  AR 27.

Plaintiff testified that he watches television, goes for short walks, reads and plays chess. AR 28-9.  He testified that his son helps him get in and out of the shower because he is afraid of falling.  AR 30.  Plaintiff testified that he could walk about a city block, lift five pounds with his dominant right arm and ten pounds with his left arm, lift his left but not right arm above his head and sit and stand for an hour at a time.  AR 32-33.  He testified

that he had trouble sleeping because the water pill he takes causes him to go to the bathroom every hour.  AR 34.

2.  Vocational expert

The administrative law judge called Calvin Turner to testify as a neutral vocational expert.  He asked Turner to consider an individual of plaintiff's age, education, work experience and the following residual functional capacity:  lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for six hours and stand or walk for four to six hours in an eight-hour day; push or pull 20 pounds occasionally and 10 pounds frequently; no climbing of ladders or work at unprotected heights; and occasional reaching at or above shoulder level with the right upper extremity, crawling, squatting, stooping, bending and climbing; and the ability to concentrate for extended periods, respond appropriately to routine changes in the work environment and perform detailed but not complex tasks. Turner testified that the individual could not perform plaintiff's past work but could perform work as an Assembler II, dry cell and battery assembler and small product assembler.

On cross examination, Turner testified that if an individual was limited to occasional manipulation, particularly in situations involving reaching, he could not perform the identified jobs.  AR 37.  He also testified that these jobs required sitting at a high bench with constant movement of the arms.

10

E.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. At step one, he found that plaintiff had not engaged in substantial gainful activity since May 26, 2006, his alleged onset date.  At step two, he found that plaintiff had severe impairments of mild degenerative disc disease, affective disorder, anxiety disorder, diabetes mellitus and hypertension.  AR 11.  At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 12.

The administrative law judge found that plaintiff retained the functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for six hours and stand or walk for four to six hours in an eight-hour day; push or pull 20 pounds occasionally and 10 pounds frequently; no climbing of ladders or work at unprotected heights; and occasional reaching at or above shoulder level with the right upper extremity, crawling, squatting, stooping, bending and climbing; and the ability to concentrate for extended periods, respond appropriately to routine changes in the work environment and perform detailed but not complex tasks.  AR 13.  The administrative law judge noted that although plaintiff's impairments reasonably could be expected to produce symptoms, his subjective complaints concerning the severity of his symptoms and limitations were not entirely

11

credible.  AR 15.  At step four, the administrative law judge found that plaintiff was unable to perform his past relevant work.  AR 16.

Relying on the vocational expert's testimony, the administrative law judge found that an individual of plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations, namely assembler II, (8,000 jobs in Texas), dry cell and battery assembler (25,000 jobs in Texas) and small products assembler (43,000 jobs in Texas).  He also determined that the expert's testimony was consistent with the information contained in the <u>Dictionary of Occupational Titles</u>. Accordingly, the administrative law judge found that plaintiff was not disabled.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the

12

administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Mental Limitations

#### 1.  Residual Functional Capacity

Plaintiff contends that the administrative law judge failed to properly weigh and consider all the evidence concerning his mental impairments and limitations, resulting in a faulty residual functional capacity determination.  A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  At the disability hearing stage, the responsibility

13

for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others.   20 C.F.R. §§ 404.1545, 404.1546.  Although it is the administrative law judge's responsibility to resolve conflicts in the medical evidence, his findings must be based on testimony and medical evidence in the record and not on his own medical conclusions.  <u>Rohan v. Charter</u>, 98 F. 3d 966, 970(7th Cir. 1996) (citations omitted).

Although the administrative law judge found that plaintiff suffered from the severe mental impairments of affective disorder and anxiety disorder, he determined that plaintiff had the residual functional capacity to concentrate for extended periods of time, respond appropriately to routine changes in the work environment and perform detailed but not complex tasks.  I agree with plaintiff that in making these findings, the administrative law judge disregarded medical evidence and drew his own medical conclusions.

Without the benefit of a medical expert, the administrative law judge discounted the opinion of state agency psychologist Chappuis, who found that plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions and moderately limited in the abilities to respond appropriately to changes in the work setting, maintain attention and concentration for extended periods, maintain social functioning and maintain concentration, persistence or pace.  The administrative law judge reported that

14

Chappuis's opinion was "not fully supported by the evidence of record, which largely indicates that the claimant denies psychological symptoms and is generally satisfied with his mental health care." AR 16. However, this reasoning shows a lack of understanding of bipolar disorder and ignores substantial evidence in the record.

The administrative law judge only briefly recounted plaintiff's diagnosis of bipolar disorder in June 2004, emphasizing that plaintiff reported feeling "okay now." He noted that in September 2004, plaintiff no longer heard voices and was doing well on Zyprexa and that in June 2005, plaintiff reported feeling good, being satisfied with his medication and sleeping and eating well. The administrative law judge indicated that plaintiff reported little change in February 2006. Although correct, this evidence all predates plaintiff's alleged onset date of May 26, 2006.

As plaintiff points out, the record shows that in 2007, plaintiff received diagnoses of bipolar disorder with hypomanic episodes and psychotic features and was assessed as having a Global Assessment Functioning Score of 50 (indicating serious symptoms or impairment in social, occupation or school functioning), which was the same score he received in 2004. Also in 2007, plaintiff's physicians noted that plaintiff was seeing dead people, hearing voices coming out of the woods, having difficulty sleeping and experiencing mood swings, delusions, manic symptoms and paranoia. In February 2007, plaintiff had lost his apartment and was living with his son. By June 2007, he was homeless. In response to plaintiff's

15

worsening condition, one physician increased plaintiff's Seroquel dosage.  However, plaintiff later reported intolerable side effects, including feeling over sedated.

Although an administrative law judge need not address every single piece of evidence in his decision, he must build an accurate and logical bridge between the evidence and his finding of plaintiff's residual functional capacity, McKinnie v. Barnhart, 368 F. 3d 907, 910 (7th Cir. 2004).  In this case, medical evidence in the record suggests that plaintiff has greater limitations than those found by the administrative law judge.  Further, the administrative law judge placed undue weight on a number of hopeful remarks made by plaintiff about his condition.  Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) (holding same where plaintiff reported "feeling well" or having improved functioning).  "A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."  Id.  For example, although bipolar disorder is treatable, many patients do not respond well to treatment or have frequent relapses.  Id. at 607.

The administrative law judge failed to consider any of these factors, ignored more recent evidence that was favorable to plaintiff and appears to have played doctor in rejecting Chappuis's medical opinion.  Accordingly, I am remanding this case to the commissioner for a new assessment of plaintiff's mental residual functional capacity.

16

2.  Credibility

The administrative law judge made several of the same mistakes in making his credibility determination as he did in assessing plaintiff's residual functional capacity.  He found that plaintiff's claimed limitations were "not credible to the extent that they are inconsistent with the residual functional capacity assessment."  AR 15.  However, in assessing a claimant's credibility, an administrative law judge must consider the degree to which the claimant's statements about his symptoms can be reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.  20 C.F.R. § 1529.  As previously discussed, the administrative law judge ignored most of plaintiff's physician's treatment notes and summarily rejected Chappuis's opinion.

In support of his credibility finding, the administrative law judge found that plaintiff failed to make any "allegations of limitations to these impairments at the hearing and the record indicates that the claimant has been generally satisfied with his treatment for several years."  AR 15.  He also found that although plaintiff exhibited several psychological symptoms in February 2007, those symptoms could be attributable to his eviction and his need to live with his son for some time when he was having trouble getting along with him.  However, plaintiff's reported symptoms are consistent with uncontrolled bipolar disorder.  "A person suffering from the disorder has violent mood swings, the extremes of which are mania—a state of high excitement in which he loses contact with reality and exhibits bizarre

17

behavior—and clinical depression, in which he has great difficulty sleeping or concentrating, has suicidal thoughts and may actually attempt suicide." <u>Bauer</u>, 532 F.3d at 607.  Further, the fact that plaintiff was evicted and was having trouble getting along with his son are more likely symptoms of his bipolar disorder and not situational causes of his psychiatric problems.

In addition to maintaining consistency with the record, an administrative law judge must evaluate other relevant factors, including the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p.  The administrative law judge failed to consider most of these factors, noting only that plaintiff was satisfied with his treatment and was able to play chess and read many books.  He ignored the side effects plaintiff experienced with Seroquel and the frequency, intensity and recurring nature of plaintiff's symptoms.

I conclude that the administrative law judge failed to build an accurate and logical bridge from the evidence to his conclusion that plaintiff's subjective complaints were not

18

worthy of belief.  Shramek v. Apfel, 226 F.3d 809, 811(7th Cir. 2000)(administrative law judge must cite sound reasons for credibility determination that are supported by the evidence in the record).  On remand, the administrative law judge should reassess plaintiff's credibility based on all the evidence in the record.

## C. Physical Limitations

In making his physical residual functional capacity determination, the administrative law judge appears to have relied primarily on the findings of the consulting physicians. However, he noted that Dr. Breazeale reached his opinion without the benefit of the entire medical record and that evidence at the hearing showed that plaintiff was more limited than Breazeale had determined.  Apart from general objections, plaintiff devotes little argument to the administrative law judge's residual physical functional capacity assessment.  He takes issue with the fact that the administrative law judge failed to adopt Breazeale's finding that plaintiff has a limited in his ability to reach in all directions except overhead and ignored Dr. Long's finding that plaintiff had limited range of motion in both shoulders.  (I note that in his reply brief, plaintiff argues for the first time that his obesity should have been considered. I will not consider this argument because it was not raised until the reply brief; arguments raised at that point are waived.  United States v. Adamson, 441 F.3d 513, 521 n.2 (7th Cir. 2006).)

Although the adjudicator limited plaintiff to only occasional overhead reaching, he failed to limit plaintiff's other forms of reaching.  Because the administrative law judge will be reconsidering his residual functional capacity assessment in light of the mental impairment evidence, he also should consider whether the evidence supports further limitations with respect to plaintiff's reaching.  If the administrative law judge finds that no further physical limitations are warranted, he should explain why he is rejecting Breazeale's reaching limitation and build a logical bridge between the evidence and his conclusion.

The administrative law judge also discounted plaintiff's reports of more restrictive lifting, sitting and walking limitations on the grounds that the objective medical evidence does not support his claims and that he is able to take short walks.  Plaintiff does not cite any medical evidence that the administrative law judge failed to consider with respect to his physical limitations.  However, because the adjudicator's assessment relies in significant part on his credibility finding, which I have found erroneous with respect to plaintiff's mental impairments, the administrative law judge should revisit his physical residual functional capacity assessment on remand.

D.  <u>Step Five</u>

Plaintiff contends that the hypothetical question posed to the vocational expert did not include all his limitations, namely his mental limitations, manipulative and reaching

20

limitations and need for a sit and stand option because of his pain.  He also contends that the vocational expert's testimony was inconsistent with the <u>Dictionary</u> because the three jobs he identified require sitting at a high bench with constant movement of the arms.  Finally, plaintiff points out that the administrative law judge did not question the expert about the consistency of his evidence with the <u>Dictionary of Occupational Titles</u>, which he is required to do under SSR 00-4p.

Because I have found errors in the administrative law judge's residual functional capacity and credibility assessments, it is not necessary to determine whether he properly framed his hypothetical or relied on testimony from the vocational expert.  However, to the extent that the administrative law judge revises his residual functional capacity assessment, he should insure that any hypotheticals posed to the vocational expert include all of the limitations supported by substantial evidence.  Also, the administrative law judge should ask the expert whether his or her testimony conflicts with the <u>Dictionary</u>.  In the event there is an *apparent* unresolved conflict, the administrative law judge must obtain a reasonable explanation from the expert for the conflict.  20 C.F.R. §§ 404.1366(e) and 416.966(e); SSR 00-4p; <u>Overman v. Astrue</u>, 546 F. 3d 456, 463 (7th Cir. 2008); <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 735 (7th Cir. 2006).

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, denying plaintiff Anthony J. Renna's application for disability insurance

benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. §405(g)

for further proceedings consistent with this opinion.  The clerk of court is directed to enter

judgment in favor of plaintiff and close this case.

Entered this 14th day of July, 2009.

BY THE COURT:

_____

BARBARA B. CRABB
District Judge

22